IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ASA DAWSON | : | CASE NO.:2:22 CV 0776 |
| 2385 Vista Lake Drive | : | |
| Batavia, Ohio 45103-2110 | : | JUDGE |
| | : | |
| and | : | |
| | : | |
| KAITLYN DAWSON | : | |
| 2385 Vista Lake Drive | : | |
| Batavia, Ohio 45103-2110 | : | |
| | : | |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE VEHICLE AND PROPERTY | : | |
| INSURANCE COMPANY | : | |
| C/O CT Corporation System | : | |
| 4400 Easton Commons Way, Suite 125 | : | |
| Columbus, Ohio 43210 | : | |
| | : | |
| *Defendant.* | : | |

PLAINTFFS ASA DAWSON'S AND KAITLYN DAWSON'S COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY JUDGMENT AND BAD FAITH

(JURY DEMAND ENDORSED HEREON)

**NOW COMES** Plaintiffs Asa Dawson and Kaitlyn Dawson, by and through undersigned counsel, and for their Complaint against the Defendant Allstate Vehicle and Property Insurance Company states as follows for breach of contract, bad faith, and declaratory judgment following the destruction of their home:

1

**JURISDICTION AND VENUE**

1. Plaintiffs Asa Dawson (Mr. Dawson) and Kaitlyn Dawson (Mrs. Dawson) (collectively the "Dawsons" or "Insureds") are individuals, residing at 2385 Vista Lake Drive, Batavia, Ohio 45103-2110 in Clermont County.

2. Defendant Allstate Vehicle and Property Insurance Company ("Allstate") is a corporation that provides property and casualty insurance policies, with corporate offices located at 2775 Sanders Road, Northbrook, Illinois 60062.

3. Allstate maintains offices nationwide, including many throughout the state of Ohio, and issued a policy declaration for "House & Home" (the "Policy"), bearing policy number 826 454 799 to the Plaintiffs that was effective August 2, 2022 for the property located at 2385 Vista Lake Drive, Batavia, Ohio 45103-2110 in Clermont County, Ohio (the "Subject Property"). The Policy in effect at the time of the loss is attached as Exhibit A.

4. This Court has subject matter jurisdiction pursuant to 15 U.S.C. §1332. There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

5. Pursuant to Ohio Revised Code §§ 2307.381-385, Civ. R. 4.3 and the due process clauses of the United States and Ohio constitutions, this Court has personal jurisdiction over all Defendant for the following reasons: Defendant transacted business in Ohio; Defendant caused tortious injury to Plaintiff in Ohio by acts inside and outside Ohio committed with the purpose of injuring Plaintiffs when Defendant might reasonably have expected that Plaintiffs would be injured in Ohio thereby; and/or Defendant purposely availed themselves of the privilege of acting and doing business in Ohio, one or more of Plaintiffs' causes of action arise out of Defendant's activities in Ohio, and the exercise of personal jurisdiction over Defendant is reasonable.

6. This Court has personal jurisdiction over Defendant pursuant to Ohio R.C. §2307.381-385 and Civ. R. 4.3 on the basis that they have caused tortious injury in Ohio by an act or omission outside Ohio and they regularly do or solicit business and engage in other persistent course of conduct in Ohio.

7. Venue is proper in the Southern District of Ohio, Western Division pursuant to 28 U.S.C. § 1391. A substantial part of the events giving rise to this action occurred in this District. Plaintiffs live in Clermont County, Ohio and the location of the loss occurred in this venue.

## STATEMENT OF FACTS

8. The Dawsons incorporate and restate the above paragraphs as if fully rewritten herein.

9. A loss by fire (the "Fire") occurred around at 8:45 P.M., on September 20, 2022 at the Dawsons' personal residence and Subject Property at 2385 Vista Lake Drive, Batavia, Ohio 45103-2110 in Clermont County, Ohio ("Home").

10. At all relevant times, the Home was insured by Allstate pursuant to an insurance policy issued by Allstate. See, Exhibit A.

11. The Policy includes coverage for "dwelling protection," "other structures protection," "Personal Property Protection," "Additional Living Expense[s]," "Family Liability Protection," "Guest Medical Protection," and "Water Back-Up." Exhibit A.

12. The Dawsons made all premium payments required by the Policy. Upon information and belief, the premiums are still being paid to Allstate even though the Home and personal property has been destroyed leaving nothing left to insure.

13. As a result of the Fire, the Home and all personal property within the Home has been destroyed.

3

14. Immediately after the Fire, Allstate received prompt notice of same. Upon Allstate's demand, the Dawsons provided a Sworn Statement in Proof of Loss reflecting a loss, to be determined more fully as the cost to reconstruct the Home is not yet known and it is unknown when the Dawsons will be able to return to the Home, of potentially up to $1,202,202.90. Allstate was provided with a detailed, itemized and line-by-line, report of the personal property loss suffered by the Insureds.

15. In October 2022, Allstate demanded that the Dawsons produce voluminous documents including federal and state income tax returns, bank statements, phone records, lenders for mortgage records, remodeling documents, and communications with their insurance agent. Many of these documents were destroyed in the Fire thereby requiring the Dawsons to compile them from third parties. Allstate also demanded Mr. Dawson's personal Facebook archive, including allowing Allstate to have direct access to any account.

16. Most of the documents and information Allstate demanded were not required to be provided to Allstate. Nevertheless, the Dawsons complied with Allstate's demands. The Dawsons hoped that doing so would result in prompt payment by Allstate. The Dawsons also complied because Allstate misrepresented the terms of the Policy by stating or implying that the information and documents were required to be produced when, in fact, they were not.

17. Allstate also demanded that the Dawsons submit to an examination under oath ("EUO"). Allstate's demand for an EUO was not based on any good faith investigation into the Dawsons' claim; rather, it was intended to intimidate the Dawsons and delay the ultimate resolution of the claim.

18. Before demanding the Dawsons produce documents or submit to an EUO, Allstate effectively denied the claim and materially breached the policy. When the Fire occurred, Allstate

refused to provide an advance of any money to the Dawsons to purchase clothes and food for their family. While Allstate paid for housing shortly after the Fire, pursuant to the Additional Living Expense policy coverage, Allstate withdrew such coverage after less than one (1) month and without prior notice to the Dawsons. Upon denying coverage for Additional Living Expenses and refusing to pay for the Dawsons to eat or cloth themselves, Allstate materially breached the policy.

19. Allstate's material breach of the policy is a breach of contract that excuses any further performance under the contract by the Dawsons. While the Dawsons complied with Allstate's unreasonably and improper demand for documentation, the Dawsons were not obligated to do so because of Allstate's material breach of the policy.

20. Due to Allstate's material breach of the policy the Dawsons are not required to sit for an EUO.

21. Allstate has not denied coverage of the claim. Despite the lack of denial, Allstate refuses to compensate the Dawsons, their Insured, for their loss.

## COUNT ONE: BREACH OF CONTRACT

22. The Dawsons incorporate and restate the above paragraphs as if fully rewritten herein.

23. The Dawsons purchased a policy of insurance whereby Allstate promised to insure the Home, the Subject Property, against loss caused by fire. The Policy insured the dwelling, other structures, and personal property. The Policy also provides for Additional Living Expenses.

24. The Dawsons fulfilled their obligations under the contract by timely paying the Policy's premiums and satisfying all conditions necessary for coverage and to file this lawsuit against Allstate.

25. Allstate's material breach of the Policy excuses any alleged non-performance by the Dawsons if such is alleged by Allstate.

26. The losses suffered by the Dawsons are covered losses. There are no exclusions that apply that would deny them coverage for their loss.

27. Allstate breached the contract by breaking their promise to the Dawsons. Allstate refuses to provide coverage for losses caused by the September 20, 2022 Fire. This includes, without limitation, refusing to issue payment for the full amount of loss available under the "dwelling protection" coverage; refusing to issue payment under the "personal property" coverage; and denying indemnification for "additional living expenses."

28. As a direct, foreseeable, and proximate result of Allstate's breach of contract, the Dawsons have suffered damages in excess of $75,000.

## COUNT TWO: DECLARATORY JUDGMENT

29. The Dawsons incorporate and restate the above paragraphs as if fully rewritten herein.

30. The Dawsons purchased a policy of insurance from Allstate, through the Alex Lubrecht Agency, that insured the Home against losses caused by a fire. The Policy insured the dwelling and personal property and contains numerous additional coverages and protections.

31. The Fire destroyed the Home and the personal property belonging to the Dawsons and others.

32. Allstate has not denied coverage for the loss caused by the Fire. Yet, Allstate refuses to indemnify the Dawsons, notwithstanding their above and beyond cooperation with demands for documentation and information outside of the scope of the Policy.

33. The following provisions provide that the loss caused by the Fire is covered by the Policy (bolding present in original document) (Labeled as Exhibit A):

**Section I—Your Property**

\* \* \*

**Dwelling Protection—Coverage A**

**Property We Cover Under Coverage A:**

1. **Your dwelling**, including attached structures. Structures connected to **your dwelling** by only a fence, utility line, or similar connection are not considered attached structures.

2. Construction materials and supplies at the **residence premises** for use in connection with **your dwelling**.

3. Wall-to-wall carpeting fastened to **your dwelling**.

\* \* \*

**Other Structures Protection—Coverage B**

**Property We Cover Under Coverage B**
1. Structures at the address shown on the Policy Declarations separated from your dwelling by clear space.
2. Structures at the address shown on the Policy Declarations connected to your dwelling by only a fence, utility line, or similar connection.

3. Construction materials and supplies at the residence premises for use in connection with structures other than your dwelling.

4. Wall-to-wall carpeting fastened to building structures other than your dwelling, at the address shown on the Policy Declarations.

\* \* \*

**Personal Property Protection — Coverage C**

**Property We Cover Under Coverage C:**

1. Personal property owned or used by an **insured person** anywhere in the world. When personal property is located away from

the **residence premises**, coverage is limited to 10% of **Personal Property Protection – Coverage C**.

\* \* \*

**SECTION I Additional Protection**

**1. Additional Living Expense**

**We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under **Dwelling Protection – Coverage A, Other Structures Protection – Coverage B** or **Personal Property Protection – Coverage C** makes **your residence premises** uninhabitable.

\* \* \*

Payment for additional living expense as a result of a covered loss under **Dwelling Protection – Coverage A, Other Structures Protection – Coverage B** or **Personal Property Protection – Coverage C** will be limited to the least of the following:

a) the time period required to repair or replace the property **we** cover, using due diligence and dispatch;

b) if **you** permanently relocate, the shortest time for **your** household to settle somewhere else; or

c) 12 months.

34. In failing to provide coverage for the Fire that destroyed the Dawsons' Home, Allstate has failed to uphold their terms of the Policy agreement it entered with the Dawsons.

35. Accordingly, the Dawsons are entitled to declaratory judgment establishing that the Home is covered under Coverage A, Coverage B, and Coverage C of the Policy and that certain additional coverages are applicable to the claim as well and that no exclusions apply that would deny the Dawsons coverage under the policy.

## **COUNT THREE: BAD FAITH**

36. The Dawsons incorporate and restate the above paragraphs as if fully rewritten herein.

37. Allstate has acted in Bad Faith in numerous ways since they were informed of the loss to the Insureds' home. This includes, but is not limited to, false statements pertaining to the terms of the Policy and the obligations of the insured following the loss and foot dragging to delay payment on the claim.

38. Despite not being required to by the Policy, but being represented as such by Allstate, the Dawsons provided Allstate with income tax returns, bank statements (individual and business), business financial records, cell phone records with telephone calls and text messages reflected therein, mortgage records, name and contact information for anyone who performed repairs at the property, prior claim history, and an authorization to obtain information signed by the Dawsons.

39. Also not required by the Policy, but demanded by Allstate, were documents relating to repairs, remodeling and improvement including emails, letters, text messages, etc., and correspondence with Allstate's own insurance agency.

40. Allstate has also made an improper demand for a forensic image of the Dawsons' cell phones. Such a duty does not fall upon the Dawsons pursuant to the terms of the Policy, yet Allstate persists in demanding same.

41. Allstate's demands were predicated under a fabricated "duty to cooperate" clause that does not exist in the Policy for this claim. Despite, this fabrication, the Dawsons have gone above and beyond the Policy requirements in a desperate attempt to speed up the claims process.

9

42. Allstate has an obligation to exercise good faith in handling of claims, including that of the Dawsons. By demanding an excess of documents from the Dawsons that are not required by the terms of the Policy, Allstate has violated this obligation of good faith.

43. Allstate does not have a reasonable justification to deny the Dawsons' claim submitted, and it has intentionally delayed processing the claim.

44. The delay in claim handling has resulted in actual damages to the insured as the cost of construction materials and labor continues to increase with rampant nationwide inflation. Furthermore, the Dawsons are paying thousands of dollars every month for their additional living expenses, which Allstate has wrongly denied coverage for.

45. Allstate is engaging in bad faith claims handling as it has no reasonable justification for not indemnifying its insured for their loss. Upon information and belief, Allstate has no evidence as to the cause of the fire. Nor does Allstate have any evidence of any motive for the Dawsons to have caused the fire. Indeed, the fire was not caused by the Dawsons, and Allstate has no reasonable basis to believe it was.

46. Allstate has engaged in further acts of bad faith in their claim handling as will be evinced in discovery.

47. As set forth in Ohio Admin. Code §3901-1-54(E) and in violation thereof, Allstate misrepresented Policy provisions to the Dawsons.

48. As set forth in Ohio Admin. Code §3901-1-54(G) and in violation thereof, Allstate engaged in dilatory claims handling and refused to pay the full amount of the claim thereby compelling its insured to file suit to recover that which is otherwise owed.

49. Allstate's violation of the Ohio Administrative Code's provision for unfair claims settlement practices, as set forth, though not limited, herein, constitutes bad faith claims handling.

50. Due to Allstate's bad faith, the Dawsons have been damaged in an amount in excess of $75,000 with the exact amount to be proven at trial.

**WHEREFORE,** The Dawsons demand judgment against Allstate for the following relief:

A. Regarding Claim One: judgment in favor of the Dawsons and against Allstate and damages in excess of $75,000, plus interest at the statutory rate of interest, with the exact amount to be determined at trial;

B. Regarding Claim Two: declaratory judgment in favor of the Dawsons and against Allstate as described herein.

C. Regarding Claim Three: judgment in favor of the Dawsons and against Allstate and damages in excess $75,000, plus interest at the statutory rate of interest, with the exact amount to be determined at trial.

D. Such other legal and equitable relief to which the Dawsons may be entitled in law or in equity, including, but not limited to, costs of the action and attorneys' fees in an amount to be determined.

Respectfully submitted,

CARLILE PATCHEN & MURPHY LLP

By: /s/ Matthew S. Brown
Matthew S. Brown (0077687)
Anthony T. Betta (0096070)
950 Goodale Boulevard, Suite 200
Columbus, Ohio 43212
Tele:  (614) 228-6135
Fax:   (614) 221-0216
Email: mbrown@cpmlaw.com
           abetta@cpmnlaw.com
*Attorneys for Plaintiffs*
*Asa and Kaitlyn Dawson*

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues presented herein.

/s/ Matthew S. Brown
Matthew S. Brown (0077687)